**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ADRIAN ACEVEDO-HERNANDEZ, *et al.*,<br><br>Defendants. | Case No. 2:14–cr-00242–JCM–VCF<br><br>**ORDER AND<br>REPORT & RECOMMENDATION** |

This matter involves the United States of America's prosecution of Adrian Acevedo-Hernandez, Jose Luis Montufar-Canales, and J. Nemias Reye Marin under, *inter alia*, the Migratory Bird Treaty Act, 16 U.S.C. §§ 703, 707(a), for possessing a Morning Dove, an American Widgeon Duck, and three Green-winged Teal Ducks with no permit. (*See* Indict. #1[1]). Before the court are Adrian Acevedo-Hernandez's Motion to Suppress (#45) and Motion to Dismiss Counts Three and Four (#46). For the reasons stated below, Acevedo-Hernandez's Motion to Suppress is denied and his Motion to Dismiss should be denied.

**BACKGROUND**

The Nevada Department of Wildlife opened an investigation into Adrian Acevedo-Hernandez in June of 2013. Someone, they were told, illegally killed two doe mule deer and posted pictures of his exploits on Facebook. Now, one of the alleged hunters, Defendant Acevedo-Hernandez, moves to dismiss two of the four counts against him and suppress evidence that was obtained from his home and car during a search authorized by a warrant. The circumstances leading to these motions are discussed below.[2]

---

[1] Parenthetical citations refer to the court's docket.

[2] This information is stated for background purposes only and does not constitute binding findings of fact. *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) ("As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient."); *see also* FED. R. CRIM. P. 57(b) ("A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district.").

## I. The Department of Wildlife Investigates

On June 5, 2013, John Anderson—a game warden with the Nevada Department of Wildlife—received an anonymous tip. (Case Narrative (#45-1) at 2). An individual named Pepiyo Ortega allegedly posted a picture of himself on Facebook posing with two illegally killed mule deer. (*Id.*) The anonymous tipster also said that Ortega lived in Hiko, Nevada, and may work for a local rancher named Paul Matthews. (*Id.*)

Anderson and a second game warden, Cameron Waithman, investigated. First, they viewed Pepiyo Ortega's public Facebook page and discovered an image resembling what the tipster described: three Hispanic males posed with two freshly killed mule deer, guns in hand. (*Id.*) A caption beneath the image stated that it was posted on May 29, 2013 at 9:37 p.m. via Blackberry mobile. (*Id.*)

Second, Anderson contacted the rancher, Paul Matthews, who identified one of the individuals in the picture as "Jose Ortega." Matthews said that Ortega works on his ranch and provided the warden with Ortega's social security number. (*Id.*) A background search revealed that Ortega's full name is Jose Manuel Ortega-Torres and that he is not licensed to hunt in Nevada. (*Id.*)

The next day, Waithman and Anderson obtained a warrant to search Ortega-Torres' home. (*Id.*) Two days later, on June 7, 2013, Waithman, Anderson, two additional game wardens, and four deputies executed the warrant. (*Id.* at 3). Deer meat, miscellaneous upland game, trace amounts of animal blood and hair, a bloodied hatchet, several dead songbirds, a computer, spotlight, cellphone, and firearms were seized. (*Id.*) Ortega-Torres said that the mule deer in the Facebook picture were killed by the two other individuals who posed next to him; but Ortega-Torres only knew one of the individuals by his moniker, El Pantera (*i.e.*, the panther). (*Id.*)

Waithman returned to Ortega-Torres' Facebook page after executing the warrant. (*Id.*) He scrolled through Ortega-Torres' friend list and found "El Pantera." (*Id.*) Several images were publically displayed

on El Pantera's page, including one showing someone displaying a killed pelican. (*Id*.) There were also pictures of El Pantera posing in body armor with various shotguns, high-powered rifles, handguns, and semi-automatic rifles. (*Id*.) One of the images captured a maroon Ford pickup and its license plate. (*Id*.)

Waithman ran the license-plate number. (*Id*.) The truck was registered to Defendant Adrian Acevedo-Hernandez. (*Id*.) Acevedo-Hernandez held a hunting license in 2012. (*Id*.) Waithman also obtained Acevedo-Hernandez DMV photograph. (*Id*.) It matched the pictures of El Pantera, leading Waithman to believe that El Pantera is Acevedo-Hernandez. (*Id*.)

## II.     The Department of Wildlife Searches Acevedo-Hernandez's Home

On June 8, 2013, Waithman obtained a second warrant to search Acevedo-Hernandez's home and vehicle. (*Id*. at 4). That warrant is the subject of the Motion to Suppress. In pertinent part, Waithman's affidavit in support of the warrant states:

> On June 7, 2013 at 0710 hours Affiant and other Nevada game wardens investigating the illegal killing of two doe mule deer served a search warrant at 6061 Stewart Ranch Road. . . . Affiant and other Nevada game wardens discovered and seized evidence of the illegal killing of two doe mule deer. Affiant is in possession of a photograph taken on the night of the crime with Acevedo-Hernandez . . . and two other Hispanic male adults posing with the two dead doe mule deer. The location of the photograph is outside the front door of the residence at 6061 Stewart Ranch Road. The area the photograph was taken is where the three individuals posed and then butchered the two doe mule deer. One of the other male adults in the photograph is the resident of 6061 Stewart Ranch Road identified as Ortega-Torres, Jose Manuel. One front shoulder of a mule deer and one rib cage of a mule deer was seized from the residence at 6061 Stewart Ranch Road. Ortega-Torres stated that the two other individuals killed the doe mule deer using a spotlight at night. Ortega-Torres stated the only deer meat that he has from the killed mule deer does was the front shoulder and ribcage and that the other individuals took the majority of the deer meat with them. Ortega-Torres stated that he did not know the name of the other individuals on the illegal hunt and in the photograph other than the "nickname" for one of them which is "El Pantera."
>
> Referencing the Facebook page of Ortega-Torres, I was able to find El Pantera (later identified as Acevedo-Hernandez, Adrian). DMV records show Acevedo-Hernandez living at 516 Bayberry Drive, Las Vegas, Nevada 89110. The Facebook page of Acevedo-Hernandez shows multiple photos of Acevedo-Hernandez with dead wildlife including obvious wildlife violations such as killing a pelican. Acevedo-Hernandez also has multiple

photographs of himself with high powered hunting rifles, semi auto rifles, shotguns and handguns.

(Waithman Aff. (#45-3) at 1).

At 6:45 p.m., Waithman executed the warrant to search for illegally killed mule deer meat and parts, weapons used to kill mule deer, and "any other illegally taken wildlife." (*Id.*); (Case Narrative (#45-1) at 5). Waithman and other game wardens from the Department of Wildlife entered Acevedo-Hernandez's home and searched the kitchen freezer. Twenty rainbow trout and various game birds were found; but there was no deer meat. (*Id.*) Waithman photographed the fish and birds, and left them behind. (*Id.*)

In the living room, Waithman found a notebook full of Hispanic names and corresponding birth dates and social security numbers. (*Id.*) He photographed several pages of the notebook but did not seize it. (*Id.*)

The game wardens expanded their search to a second freezer located on the back patio (*Id.*) It was padlocked. (Def.'s Reply (#57) at 5:18). Once the lock was broken, additional game birds and a large amount of mule deer meat was discovered inside. (Case Narrative (#45-1) at 5). Waithman photographed the birds, returned the birds to the freezer, and packaged and seized the deer meat. (*Id.*)

A Morning Dove, an American Widgeon Duck, and three Green-winged Teal Ducks were allegedly among the birds Waithman photographed. These species are protected by the Migratory Bird Treaty Act 16 U.S.C. §§ 703, 707(a), which requires hunters to tag protected birds and include the signature of a licensed hunter, her address, the total number and species of birds taken, and the date the birds were shot. A report written after the search was completed states that the birds in Acevedo-Hernandez's freezer were untagged. (*See* Doc. #46-2 at 4).

After the game wardens completed their search—which included a search of Acevedo-Hernandez's truck—they unplugged the kitchen freezer, left the back-patio freezer door ajar, padlocked Acevedo-Hernandez's front door, and departed. (Def.'s Reply (#57) at 5:11–23). By the time Acevedo-Hernandez regained accesses to his home, the contents of both freezers spoiled. (*Id.*) Acevedo-Hernandez discarded their contents, including what the government alleges was a Morning Dove, American Widgeon Duck, and three Green-winged Teal Ducks. (*Id.*)

### III. <u>Acevedo-Hernandez is Indicted & Moves to Dismiss and Suppress</u>

On July 16, 2014, Acevedo-Hernandez was indicted with two counts of Prohibited Person in Possession of a Firearm in violation of 18 U.S.C. 922(g)(5)(A), 924(a)(2)[3] and two counts of misdemeanor violations of the Migratory Bird Treaty Act, 16 U.S.C. §§ 703, 707(a), for possessing a Morning Dove, an American Widgeon Duck, and three Green-winged Teal Ducks with no permit. (*See generally* Indict. #1). Now, Acevedo-Hernandez moves to dismiss the indictment and suppress the evidence that Waithman obtained during the June 8, 2013 search of Acevedo-Hernandez's home.

Acevedo-Hernandez contends that counts three and four of the indictment, which concern the dove and four ducks, should be dismissed because potentially exculpatory evidence—(*viz.*, the actual animal carcasses)—disappeared, depriving him of his right to access exculpatory evidence under the Due Process Clause. Additionally, Acevedo-Hernandez asserts that evidence from the June 8, 2013 search should be suppressed because Waithman's affidavit lacked probable cause to warrant a search. This order and report and recommendation follows.

---

[3] The government alleges that Acevedo-Hernandez is an illegal-alien who used other individuals' social security numbers to obtain hunting permits.

**DISCUSSION**

The parties' filings present two question: (1) whether Acevedo-Hernandez is entitled to an evidentiary hearing under *Franks v. Delaware* to challenge a Justice of the Peace's probable-cause determination and (2) whether the Migratory-Bird-Treaty-Act charges should be dismissed because the animal carcasses are unavailable. Each question is addressed below.

**I.     Whether Acevedo-Hernandez is Entitled to a *Franks* Hearing**

Acevedo-Hernandez argues that he is entitled to a *Franks* hearing for three reasons: the affidavit misrepresented (1) the contents of the Facebook pictures, (2) Ortega-Torres' statements to the game wardens, and (3) Acevedo-Hernandez' hunting and fishing permit history. Before addressing these arguments, the court begins its analysis with the governing law.

**A.     Franks v. Delaware *& Challenges to Warrant Proceedings***

The Fourth Amendment protects "against unreasonable searches and seizures." It provides that "[n]o warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. amend. IV. The text of the Fourth Amendment expressly imposes three requirements on searches and seizures. First, the searches and seizures must be "reasonable." Second, if required, all warrants must be predicated "upon probable cause." Third, if required, all warrants must "particularly describe[s] the place to be searched, and the persons or things to be seized." *Id*.

The probable cause requirement is normally satisfied by an affidavit executed by an investigating officer. Probable cause is a fluid concept. *Illinois v. Gates*, 462 U .S. 213, 238–39 (1983). It is the product of "a practical, common-sense" inquiry, which is not easily reduced to a set of technical rules. *Id*. Probable cause exists if "a magistrate judge" concludes that "given all the circumstances set forth in the affidavit[,] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.

And the duty of a reviewing court is simply to ensure that the magistrate [judge] had a substantial basis for concluding that probable cause existed." *Id.* (citation, internal quotation marks, and ellipses omitted).

Probable cause does not exist if an affidavit is supported by "wholly conclusory statement[s]." *Id.* at 239. For instance, "[a] sworn statement of an affiant that he has cause to suspect and does believe that liquor illegally brought into the United States is located on certain premises will not do." *Id.* (citing *Nathanson v. United States*, 290 U.S. 41 (1933). Similarly, "[a]n officer's statement that affiants have received reliable information from a credible person and believe that heroin is stored in a home, is likewise inadequate. *Id.* (citing *Aguilar v. Texas*, 378 U.S. 108 (1964).

In *Franks v. Delaware*, 438 U.S 154 (1978), the Supreme Court established a two-prong test for overturning a magistrate judge's probable cause finding. First, the there is a "presumption of validity with respect to the affidavit supporting the search warrant." *Id.* at 171. Second, a defendant is entitled to an evidentiary hearing on the validity of the affidavit only if he can make a "substantial showing" that: (1) the affidavit contains intentionally or recklessly false statements or misleading omissions and (2) the affidavit cannot support a finding of probable cause without the false information or with the misleading omissions. *Id.* at 155–56.

The Ninth Circuit articulated five requirements that a defendant must satisfy to warrant a *Franks* hearing: (1) the defendant must allege specifically which portions of the warrant affidavit are claimed to be false; (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of proof, including affidavits, must accompany the allegations; (4) the veracity of only the affiant must be challenged; (5) the challenged statements must be necessary to find probable cause. *United States v. Perdomo*, 800 F.2d 916, 920 (9th Cir. 1986) (citing *United States v. Dicesare*, 765 F.2d 890, 895 (9th Cir. 1985)).

This means that a defendant must show that the affidavit could not support a finding of probable cause even if it were purged of its falsities and supplemented by the omissions. *See United States v. Stanert*, 762 F.2d 775, 778 (9th Cir. 1985) (citing *Franks*, 438 U.S. at 171–72). A judge's probable cause determination is accorded "significant deference," *United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir. 1995), and will be overturned only if it is "clearly erroneous." *Stanert*, 762 F.2d at 778. In making this determination, the court is "limited to the information and circumstances contained within the four corners of the underlying affidavit." *Id*. The duty of a reviewing court is to ensure that the magistrate judge had a "substantial basis" for concluding that probable cause existed. *Gates*, 462 U.S. at 238 (internal quotations omitted).

### B.   *Acevedo-Hernandez's Motion for a* **Franks** *Hearing is Denied*

As a preliminary matter, the court notes that Acevedo-Hernandez styled his motion as a motion to suppress. The court, however, construes the motion as a motion for a *Franks* hearing for two reasons. First, the gravamen of Acevedo-Hernandez's motion is that the Justice of the Peace erred in concluding that there was probable cause to issue search warrants because the warrants were allegedly defective. (*See* Def.'s *Franks* Mot. (#45) at 6). This invokes *Franks v. Delaware*. Second, the Government has construed Acevedo-Hernandez's motion as a motion for a *Franks* hearing. (*See* Gov't's Opp'n (#61) at 6).

Properly distinguishing between a motion to suppress and a motion for a *Franks* hearing is important because it affects the standard of review under 28 U.S.C. § 636(b)(1) and Local Rules IB 1–3 and IB 1–4. These provisions govern the jurisdiction and powers of U.S. Magistrate Judges. They provide that U.S. Magistrate Judges many only decide motions to suppress by issuing a "proposed findings of fact and recommendations" (*i.e.*, a Report & Recommendation). *See* 28 U.S.C. § 636(b)(1)(C); LR IB 1–4(h). Proposed findings of fact and recommendations are subject to a *de novo* standard of review. 28 U.S.C.

§ 636(b)(1)(C).

By contrast, 28 U.S.C. § 636(b)(1)(A) and Local Rule IB 1–3 state that U.S. Magistrate Judges may "hear and finally determine any pretrial matter not specifically enumerated as an exception in 28 U.S.C. § 636(b)(1)(A). Matters not exempted by 28 U.S.C. § 636(b)(1)(A) include a motion to determine whether or not the court should hold a hearing under *Franks v. Delaware*. *See* 28 U.S.C. § 636(b)(1)(A). Matters not exempted by 28 U.S.C. § 636(b)(1)(A) are subject to the "clearly erroneous or contrary to law" standard of review, which is a higher standard than the *de novo* standard. *See id.*[4]

With this proviso in mind, the court turns to the merits of the parties' filings. Acevedo-Hernandez's motion for a *Franks* hearing is denied for three reasons. First, Waithman's affidavit explicitly provides probable cause to issue a warrant. In pertinent part, it states that "[t]he Facebook page of Acevedo-Hernandez shows multiple photos of Acevedo-Hernandez with dead wildlife including obvious wildlife violations such as killing a pelican." (Waithman Aff. (#45-3) at 2). For laymen, a dead pelican may not be an "obvious wildlife violations." However, the Migratory Bird Treaty Act, 16 U.S.C. §§ 703, 707, makes it illegal to kill or possess a pelican. Simply put, there is no season for pelican hunting, and possessing one—as Acevedo-Hernandez allegedly did in the image—is illegal. *See* 16 U.S.C. §§ 703, 707. This alone supports a finding of probable cause.

---

[4] The court recognizes that these distinctions may lend themselves to confusion in the context of a motion for a *Franks* hearing. As discussed above, *Franks* hearings involve two steps. (*See supra* § I.A). First, the court must determine whether the defendant has made a "substantial preliminary showing" to warrant a hearing. (*Id.*) Second, if the defendant made a "substantial preliminary showing," then the court holds a hearing and decides whether probable cause existed to issue a warrant. (*Id.*) Because the first step is only a motion for a hearing, the court may dispose of the motion with an order. *See* 28 U.S.C. § 636(b)(1)(A) (not exempting motions for evidentiary hearings from the U.S. Magistrate Judge's jurisdiction). However, because the second step of the *Franks* inquiry involves the possibility of suppressing evidence that is the fruit of an unlawful search and seizure, the court can only dispose of the second step with a report and recommendation. *See id.*; LR IB 1-4(h) (requiring a report and recommendation for motions to suppress); *see also United States v. Thoms*, 684 F.3d 893, 897 (9th Cir. 2012) (noting that a U.S. Magistrate Judge granted a motion for a *Franks* hearing by order and later issued a report and recommendation concerning the outcome of the hearing).

Acevedo-Hernandez contends that Waithman's failure to include the image constitutes a material omission because "it [is] obvious that it is impossible to identify who is holding the pelican" in the picture. (Doc. #45 at 10:15). This omission is not material. As stated by Justice Frankfurter, "the issue in warrant proceedings is not guilt beyond reasonable doubt but probable cause for believing the occurrence of a crime." *United States v. Harris*, 403 U.S. 573, 584 (1971) (Frankfurter, J., concurring).

Here, it is immaterial that the image shows a slain bird whose carcass casts a shadow over its possessor's face. The affidavit states that Acevedo-Hernandez's Facebook page contains numerous images of Acevedo-Hernandez hunting. The affidavit also states that the image of the pelican came from Acevedo-Hernandez's Facebook page. These facts provide probable cause to believe that Acevedo-Hernandez killed and possessed the pelican.[5] Waithman's statement that it was, in fact, Acevedo-Hernandez is not materially misleading.

Second, Acevedo-Hernandez's motion for a *Franks* hearing is denied because the remaining substantive bases for challenging the affidavit—(*viz.*, that the affidavit misrepresented the contents of the deer picture, Ortega-Torres' statements to the game wardens, and Acevedo-Hernandez' hunting and fishing permit history)—are not "necessary to find probable cause." *Perdomo*, 800 F.2d at 920 (citing *Dicesare*, 765 F.2d at 895)). This, however, is what the Ninth Circuit requires: a defendant must show that the affidavit could not support a finding of probable cause even if it was purged of its falsities and supplemented by the omissions. *See United States v. Stanert*, 762 F.2d 775, 778 (9th Cir. 1985) (citing *Franks*, 438 U.S. at 171–72). Even if the court credited each of Acevedo-Hernandez's additional bases

---

[5] Killing a pelican and possessing a pelican are separate and distinct violations under the Migratory Bird Treaty Act, 16 U.S.C. §§ 703, 707. As a result, the single image of an individual holding a dead pelican provides probable cause for believing that "obvious wildlife *violations*" occurred. Therefore, contrary to Acevedo-Hernandez's assertion, Waithman possessed an image of Acevedo-Hernandez that provided probable cause to believe that at least two obvious violations occurred: killing the pelican and possessing the pelican. (Reply (#63) at 3:18–19).

for challenging the affidavit—which it does not[6]—the affidavit supports a finding of probable cause because of the pelican.

Third, Acevedo-Hernandez's assertion that the information in the warrant was "stale" is also unpersuasive. A search warrant is not stale so long as "there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises." *United States v. Angulo–Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986) (quoting *United States v. Gann*, 732 F.2d 714, 722 (9th Cir. 1984)) (internal quotation marks omitted). Staleness must be evaluated in light of the particular facts of the case and the nature of the criminal activity and property sought. *See United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991). The test for judging the timeliness of a search warrant is whether there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises. *Gann*, 732 F.2d at 722.

Acevedo-Hernandez argues that the affidavit is stale because "there is no reference to when the event of killing the deer occurred." This is incorrect. The affidavit expressly states that on June 7, 2013, game wardens for the Department of Wildlife served a search warrant in connection with two illegally killed doe mule deer. (Waithman Aff. (#45-3) at ¶ 3). June 7, 2013 marked one day before the warrant to search Acevedo-Hernandez's home was obtained. Although the affidavit does not provide the exact date when the deer were allegedly killed, the failure to do so is irrelevant. Waithman sought the warrant one

---

[6] For instance, Acevedo-Hernandez argues that the affidavit is fatally flawed because it materially misrepresents the contents of the deer picture by stating that it depicts Acevedo-Hernandez when, in fact, "[t]he deer photograph is of such poor quality that it is impossible to identify Acevedo-Hernandez." (Reply (#63) at 2:19–20). Waithman's failure to include the image is not a materially misleading omission. The affidavit states that (1) Ortego-Torres said that the two other individuals in the picture killed the deer, (2) one of the individual's moniker is El Pantera (i.e., Acevedo-Hernandez), and (3) Acevedo-Hernandez's Facebook page depicts Acevedo-Hernandez hunting multiple animals, including a pelican. These facts support a finding of "probable cause for believing the occurrence of a crime." *Harris*, 403 U.S. 573, 584. The fact that it is impossible to positively identify Acevedo-Hernandez in the picture by relying on nothing but the picture, as Acevedo-Hernandez asserts, is irrelevant.

day after executing a different warrant in connection with the same investigation. This provides a sufficient basis to believe that the information he relied on was not stale.

Acevedo-Hernandez also argues that the information is stale because the deer meat was found in the freezer and, therefore, may have been frozen months earlier. (Reply (#63) at 5:17–20). The fact that deer meat was discovered in the freezer—without more—shows nothing. The deer meat may have been placed in the freezer hours or months before Waithman's search. The affidavit, however, indicates that it is the former because the deer meat is part of an investigation that occurred the day before, which led the game wardens to Acevedo-Hernandez's freezer.

## II.     *Whether Counts Three & Four should be Dismissed*

The parties' filings present a second question: whether the court should dismiss the charges against Acevedo-Hernandez under the Migratory Bird Treat Act because the carcasses of the Morning Dove, American Widgeon Duck, and three Green-winged Teal Ducks have disappeared. The court begins its analysis with the governing law.

### A.     California v. Trombetta *& Evidence Spoliation*

The Fifth and Fourteenth Amendments prohibit the state and federal government from depriving any person of "life, liberty, or property, without due process of law." U.S. CONST. amend. V, XIV. In the criminal context, one of the central tenets of due process is that the government's prosecution must comport with "prevailing notions of fundamental fairness." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 872 (1982) (citing *Lisenba v. California*, 314 U.S. 219, 236 (1941)). In *California v. Trombetta*, the Supreme Court concluded that this places a duty to preserve "evidence that might be expected to play a significant role in the suspect's defense." *California v. Trombetta*, 467 U.S. 479, 488–89 (1984).

The government does not, however, have "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution."

*Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). Rather, the government's duty to preserve evidence is limited to evidence whose "exculpatory value was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 489. Destruction of potentially exculpatory evidence does not violate the Constitution unless the evidence was destroyed in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

The "mere possibility" that the lost or destroyed evidence is exculpatory does not meet the materiality standard. *United States v. Agurs*, 427 U.S. 97, 110–111 (1976). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id*. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *United States v. Bagley*, 473 U.S. 667, 682 (1985).

**B.**   *Acevedo-Hernandez's Motion to Dismiss should be Denied*

Acevedo-Hernandez failed to demonstrate that a constitutional violation occurred. He contends that the government violated the Due Process Clause by photographing the Morning Dove, American Widgeon Duck, and three Green-winged Teal Ducks, returning them to the freezer, and permitting Acevedo-Hernandez to later discard them. (*See* Def.'s Reply (#57) at 5). These circumstances do not offend "prevailing notions of fundamental fairness" for at least three reasons. *Valenzuela-Bernal*, 458 U.S. at 872.

First, the government's duty to preserve evidence only extends to evidence whose exculpatory value was apparent before the evidence was destroyed. *Trombetta*, 467 U.S. at 489. Acevedo-Hernandez contends that the government had a duty to seize and preserve the bird carcasses when it searched his home. This argument fails as a matter of law. Acevedo-Hernandez made no showing that the government knew that the bird carcasses had an "apparent exculpatory value" before Acevedo-Hernandez destroyed

them. Doing so would require Acevedo-Hernandez to show that the government knew that the birds were the subject of a criminal charge and either legally obtained or not the species alleged in the indictment. As the record currently stands, the court has no basis to conclude that the bird carcasses had an "apparent exculpatory value" before they were destroyed.

Second, a constitutional violation for the destruction of evidence only occurs where the defendant is unable to obtain comparable evidence by other reasonably available means. *Trombetta*, 467 U.S. at 489. Comparable evidence exists here: namely, the government's photographs of the bird carcasses. Acevedo-Hernandez contends that this evidence is not comparable because the quality of the photographs is poor and neither party can extract DNA, blood, or tissue samples from the photographs to positively identify the animals. (Doc. #46 at 3:12–19). The court is unpersuaded. Acevedo-Hernandez made no showing that the carcasses are necessary to identify the birds' species and that an expert cannot determine their species by relying on the photographs.[7]

Third, Acevedo-Hernandez has, at best, shown that the lost evidence may be potentially exculpatory. However, he made no showing that the government acted in bad faith by failing to preserve the evidence. *Youngblood*, 488 U.S. at 58.

Acevedo-Hernandez's Motion to Dismiss should be denied. As applied here, the Due Process Clause guarantees Acevedo-Hernandez a "meaningful opportunity to present a complete defense." *Trombetta*, 467 U.S. at 485. He contends that the loss of the birds' carcasses undermines his ability to defend against the government's charges; but he is mistaken. If the photographs impair the government's ability to identify the birds as protected species, which Acevedo-Hernandez contends, then Acevedo-

---

[7] Acevedo-Hernandez asserts that "a determination of the species of the frozen birds found in the freezer cannot be based solely on the poor-quality photographs that were taken at the scene." (Doc. #46 at 3:16–19). He cites a government report of investigation in support. The report, however, suggests the opposite: that the government identified the birds were identified relying on the photographs. (*See* Doc. #46-2) at 4).

Hernandez may raise doubts regarding the birds' species and, consequently, their status as protected species. This only bolsters his defense.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that the court's January 21, 2015, hearing is VACATED. *See* LR 78-2; FED. R. CRIM. P. 57(b).

IT IS ORDERED that Adrian Acevedo-Hernandez's Motion for a *Franks* Hearing (*i.e.*, "Motion to Suppress") (#45) is DENIED.

IT IS RECOMMENDED that Adrian Acevedo-Hernandez's Motion to Dismiss (#46) be DENIED.

DATED this 7th day of January, 2015.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE